IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRISTOBAL GARIBAY, RODRIGO ALVARENGA, and CARLOS GONZALEZ, on behalf of themselves and all other similarly situated persons, known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> GARDEN FRESH - MOUNT PROSPECT, INC., GARDEN FRESH – ARLINGTON HEIGHTS, INC. GARDEN FRESH FRUIT MARKET, INC. and ADI MOR, individually, <br><br> Defendants. | Case No. 08 C 636 <br><br> Judge Guzman |

## MOTION FOR A PROTECTIVE ORDER

Plaintiffs move this Court for a protective order, in the form attached hereto as Exhibit A, from all discovery relating to, or bearing upon Plaintiffs' immigration status, including certain documents Defendants requested in the riders they attached to the Notices of Deposition they served on Plaintiffs.[1] In support of this Motion, Plaintiffs state as follows:

### I.   BACKGROUND FACTS

This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), for Defendants' failure to pay overtime wages to Plaintiffs and other similarly-situated persons who worked for the eight (8) grocery stores commonly owned by Adi Mor and commonly operating under the "Garden Fresh Market" brand name. Plaintiffs Cristobal Garibay, Rodrigo Alvarenga,

---

[1] A similar order, barring discovery on information relating to immigration status in an FLSA action was recently entered by Magistrate Judge Denlow on April 9, 2008. That April 9, 2008 Protective Order is attached hereto as Exhibit B.

and Carlos Gonzalez customarily worked in excess of forty (40) hours per week but they were not paid all their earned overtime wages at the rate of one and a half times their regular rate of pay for all time worked in excess of forty (40) hours per week. Instead, Plaintiffs and other similarly-situated employees were paid their regular hourly rate of pay for all such overtime they worked.

On May 15, 2008, Plaintiffs' Counsel was served, via electronic mail, with a Notice of Deposition for Plaintiff Rodrigo Alvarenga. That Notice scheduled Plaintiff Alvarenga's deposition for May 23, 2008. See the May 23rd Notice of Deposition, attached hereto as Exhibit C. That Notice also contained a rider requesting that Plaintiff Alvarenga produce certain documents, all relating to Plaintiff Alvarenga's immigration status and criminal history. Defendants requested that Plaintiff Alvarenga produce the following documents:

1. All of Rodrigo Alvarenga's State and Federal identification cards, including a Social Security Card, Driver's License, Resident Alien Card, Birth Certificate, and State Identification Card;

2. All documents related to Rodrigo Alvarenga's immigration status;

3. All State and Federal identification cards, including a Social Security Card, Driver's License, Resident Alien Card, Birth Certificate, and State Identification Card for Kelvin Alvarenga, Jesus Peralta, Adrian Celaya, and Kelvin Alvarrayoa.

4. All documents related to the immigration status of Kelvin Alvarenga, Jesus Peralta, Adrian Celaua, and Kelvin Alvarrayoa.

5. All records related to the arrest or conviction of Rodrigo Alvarenga for any crime or misdemeanor within the last ten (10) years.

6. All records related to the arrest or conviction of Kelvin Alvarenga, Jesus Peralta, Adrian Celaya, and Kelvin Alvarrayoa for any crime or misdemeanor within the past ten (10) years.

See Exhibit C. Notably, the rider requested no documents relating to the hours Plaintiff Alvarenga worked or the wages he was paid – two of the most critical components for his overtime claims.

Upon receipt of the Deposition Notice, Plaintiffs' Counsel informed Defendants' Counsel that they were unable to produce Mr. Alvarenga on the noticed date due to scheduling conflicts. Thereafter, Plaintiffs' Counsel also informed Defendants' Counsel that Plaintiffs objected to Defendants' attempts to discover documents and information bearing on Plaintiffs' immigration status. See Plaintiffs' Counsel's May 20, 2008 correspondence to Defendants' Counsel, attached hereto as Exhibit D. Following a motion hearing held in this matter on May 27, 2008, Maureen Bantz, Counsel for Plaintiffs, and Todd Brandel, Counsel for Defendants, spoke outside of Court. Ms. Bantz indicated that Plaintiffs would make themselves available for depositions, but that the parties would need to resolve their dispute relating to the discoverability of information bearing on Plaintiffs' immigration status before Plaintiffs would be produced.

On June 6, 2008, Defendants, via electronic mail, served Plaintiffs' Counsel with a Notice of Deposition for Cristobal Garibay, and noticed that deposition for June 16, 2008. See Defendants' Counsel's June 6, 2008 correspondence, containing the June 16th Notice of Deposition, attached hereto as Exhibit E. That Notice of Deposition also contained a Rider, which once again requested documents exclusively bearing on Plaintiff's immigration status and criminal record. The rider specifically requested production of the following documents:

1. All of Cristobal Garibay's State and Federal identification cards, including a Social Security Card, Driver's License, Resident Alien Card, Birth Certificate, and State Identification Card;

2. All documents related to Cristobal Garibay's immigration status;

3. All records related to the arrest or conviction of Cristobal Garibay for any crime or misdemeanor within the last ten (10) years.

See Exhibit E.

In the correspondence sent along with the Deposition Notice, Defendants' Counsel conceded that immigration status is irrelevant to whether a plaintiff may recover under the FLSA, but claimed that immigration status is relevant to whether plaintiffs are adequate class representatives because a "representative plaintiff who could be deported at any time does not adequately represent the unnamed class members." Exhibit E.

On June 9, 2008, Counsel for both parties held a telephonic discovery conference pursuant to Local Rule 37.2. The parties discussed, in part, Defendants' insistence on taking discovery relating to Plaintiffs' immigration status and Plaintiffs' objections to such discovery. During that conference, counsel for both parties acknowledged they were at impasse with respect to that issue. See Plaintiffs' Counsel's June 9, 2008 correspondence to Defendants' Counsel, attached hereto as Exhibit F. The parties have in good faith conferred with each other in an effort to resolve this dispute without court action but have been unable to do so.

On June 12, 2008, Defendants' Counsel filed a Motion to compel the depositions of Plaintiffs. Given that neither party is inclined to have the same plaintiff deposed, twice, Plaintiffs request that the Court resolve the dispute regarding the relevancy of discovery relating to immigration status before Plaintiffs are produced for their depositions. Plaintiffs further request that the Court enter the protective order set forth in Exhibit A, barring Defendants' from taking harassing and prejudicial discovery bearing on Plaintiffs' immigration status.

## II.   APPLICABLE LEGAL STANDARD

Under Rule 26(c), upon a showing of good cause by the moving party, a court may intervene and impose a protective order to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed R. Civ. P. 26(c). Once such a

burden is met by a moving party, a court may then submit a protective order to provide for the limitation or elimination of that discovery request. *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007). The burden is upon the moving party to make a "particular and specific demonstration of fact" in order to demonstrate good cause. *Id.*

### III. DISCOVERY RELATED TO IMMIGRATION STATUS IS IMPROPER AND SHOULD NOT BE ALLOWED

#### A. Discovery Related to Immigration Status is Irrelevant to Plaintiffs' Right of Recovery under the FLSA

An undocumented worker is an "employee" under the Fair Labor Standards Act. *Patel v. Quality Inn South*, 846 F.2d 700, 705-06 (11th Cir. 1988); *Vega v. Contract Cleaning Maintenance, Inc.*, No. 03-9130, slip op. at 10 (N.D. Ill. Jan. 31, 2005). As such, undocumented workers are entitled to the full range of remedies available under the FLSA, without regard to their immigration status. *Patel*, 846 F.2d at 706; *Montoya v. S.C.C.P. Painting Contrs., Inc.*, 530 F. Supp. 2d 746, 749 (D. Md. 2008).

As Defendants concede (Exhibit E), the immigration status of plaintiffs is not a relevant issue in an action seeking to recover unpaid wages under the Fair Labor Standards Act. *E.g. Patel v. Quality Inn South*, 846 F.2d 700, 705-706 (11th Cir. 1988), cert. denied, 489 U.S. 1011 (1989); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987)(granting mandamus to overturn a district court motion to compel), *cert. denied*, 487 U.S. 1235, 108 S.Ct. 2901, 101 L.Ed.2d 934 (1988); *Ponce v. Tim's Time Inc.*, No. 03 C 6123, 2006 WL 941963 (N.D. Ill. March 16, 2006); *Galaviz-Zamora v. Brady Farms*, 230 F.R.D. 499 (W.D. Mich. 2005); *Renteria v. Italia Foods, Inc.*, 2003 WL 21995190 (N.D. Ill. Aug. 2, 2003); *Flores v. Amigon*, 233 F. Supp. 2d 462 (E.D.N.Y. 2002); *Zeng Liu v. Donna Karen International, Inc.*, 207 F. Supp. 2d 191 (S.D.N.Y. 2002) (citing *In Re Reyes*, 814 F.2d 168 (5th Cir. 1987)); *Flores v. Albertsons, Inc.*, No. CV0100515AHM(SHX),

2002 WL 1163623, at *4-5 (C.D. Cal. April 9, 2002); *Singh v. Jutla*, 214 F. Supp. 2d 1056 (N.D. Cal. 2002); *Cortez v. Medina's Landscaping*, No. 00 C 6320, 2002 U.S. Dist. LEXIS 18831 (N.D. Ill. Sept. 30, 2002).

Thus, courts have granted plaintiffs in FLSA cases protection from inquiries that touch on immigration status because they recognize the chilling effect that such discovery can exercise on the very workers who are most likely to need the protection of the Fair Labor Standards Act. *Flores v. Amigon*, 233 F. Supp. 2d at 464; *Liu*, 207 F. Supp. 2d at 193; *Galaviz-Zamora*, 230 F.R.D. 499 (barring discovery on immigration status, tax information, identification documents, residency information, including the dates and time Plaintiffs entered the United States); *Montoya*, 530 F. Supp. 2d 746 (barring discovery on immigration status and tax information); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001)(barring discovery on immigration status); *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601 (S.D. Fla., 2002)(same).

As Judge Garcia noted in refusing to compel discovery in *Bernal v. A.D. Willis Company, Inc.*, No. SA-03-CA-196-OG (W.D. Tex. April 1, 2004):

> In addition, discovery into the plaintiffs' immigration status poses a serious risk of injury to Plaintiffs outweighing any need for disclosure. As the court in *Liu* noted: "Even if the parties were to enter into a confidentiality agreement restricting the disclosure of such discovery…, there would still remain 'the danger of intimidation, the danger of destroying the cause of action' and would inhibit the plaintiffs in pursuing their rights." *Liu*, 207 F. Supp. 2d at 193 (quoting *Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) (granting plaintiffs' motion disallowing deposition questions as to plaintiffs' immigration status) [unpub. Order; hearing tr. attached at 10-13]. *Accord Flores v. Amigon* 233 F. Supp. 2d at 463-464.

See the *Bernal v. A.D. Willis Company, Inc.* opinion, attached hereto as Exhibit G.

Other courts have invoked the very same concerns in protecting Plaintiffs from similar discovery in cases involving Title VII claims. *E.g. Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064

6

(9th Cir. 2004); *EEOC v. The Restaurant Co.,* 448 F. Supp. 2d 1085, 1086-88 (D. Minn. 2006); *EEOC v. City of Joliet,* 239 F.R.D. 490 (N.D. Ill. 2006).

In sum, courts have universally held that immigration status is not relevant to causes of action arising under the FLSA, and thus, have held that defendant-employers are not entitled to discovery relating to their employees' immigration status.

### B.   Discovery Relating to Immigration Status is Irrelevant to Plaintiffs' Ability to Adequately Represent Putative Class Members

Defendants creatively attempt to subvert the policies prohibiting defendant employers from taking discovery on plaintiff employees' immigration status in FLSA actions by arguing that such information is relevant to whether Plaintiffs are adequate class representatives. Specifically, Defendants argue that if the plaintiffs are undocumented workers, they could be subject to deportation, which would interfere with their ability to represent the interests of the class. (See Exhibit D.) But, this exact argument failed in *Martinez v. Mecca Farms, Inc.,* 213 F.R.D. 601, 606 (S.D. Fla. 2002). In *Martinez,* the defendant employer urged the court to follow *Hagen v. City of Winnemucca,* 108 F.R.D. 61 (D. Nev. 1985), which held that a former prostitute, a citizen of Great Britain, who sought to bring a class action on behalf of all the defendant city's prostitutes, was not an adequate class representative because the fact that she could be subject to deportation was a possible entanglement. The *Martinez* court held that *Hagen* did not apply and distinguished it by stating the following:

> The [Hagen] court found the plaintiff's possible deportation a possible entanglement. However, the court did not suggest that a deportable alien was inherently unfit to be a class representative. The court denied certification because the plaintiff's deportation could have been used against her as a defense, *a defense not available to the other class members.* In sum, the fact that the plaintiff had interests that clearly differed from other class members defeated certification. Such is not the case here.

7

*Martinez,* 213 F.R.D. at 606 (emphasis in original). Other courts have regarded undocumented individuals as suitable class representatives as well. *See Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1303 (9th Cir. 1990)(certified a class of 1349 undocumented Mexican workers who alleged violations of their employment rights under the Farm Labor Contractor Registration Act); *Haywood v. Barnes,* 109 F.R.D. 568, 580 (E.D.N.C. 1986) ("Defendants' argument that the migratory nature of plaintiffs bars them as class representatives is wholly without merit. Taking defendants' assertion to its logical conclusion, it would effectively eliminate class actions as a device to aid migrant farmworkers in the protection of their rights").

Moreover, the consequences of permitting a defendant employer to take discovery relating to a plaintiff class representative's immigration status outweigh the defendant's need for such information because "It is entirely likely that any undocumented class member forced to produce documents related to his or her immigration status will withdraw from the suit rather than produce such documents and face termination and/or potential deportation." *Flores v. Albertsons, Inc.,* 2002 U.S. Dist. LEXIS 6171, at *20 (C.D. Cal. April 9, 2002); see also *Topo v. Dhir,* No. 01 Civ 10881, 2002 U.S. Dist. LEXIS 17190, at *6 (S.D.N.Y. 2002)( A worker-plaintiff's "fears of her immigration status deterring further prosecution of her claims are well founded. Court have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim"); *Liu,* 207 F. Supp. at 193 (revelation of immigration status carries "danger of intimidation [that] would inhibit plaintiffs in pursuing their rights").

As aptly explained in *Montoya v. S.C.C.P. Painting Contractors, Inc., et al.,* 530 F. Supp. 2d 746, 750 (D. Md. 2008):

> This Court agrees with these other courts that the immigration status of a class representative is irrelevant in wage and hour cases, in light of FLSA's coverage of all workers – undocumented or not. Court have noted that such a position not only benefits the individual workers, but advances the goals of the FLSA. 'Permitting an employer to circumvent the labor laws as to undocumented aliens 'permits abusive exploitation of workers' and 'created an unacceptable economic incentive to hire undocumented workers by permitting employers to underpay them.'" (citations omitted) To allows the immigration status of a class representative to be investigated – indeed to require a representative to enjoy legal immigration status—would seriously undermine the effectiveness of the FLSA.

*See also Galviz-Zamora v. Brady Farms, Inc.,* 230 F.R.D. 499, 502 (W.D. Mich. 2005) ("The Court fails to discern the relevance of any Plaintiff's immigration status on his or her ability to adequately represent other class members... Furthermore, the damage and prejudice which would result to Plaintiffs if discovery into their immigration status is permitted far outweighs whatever minimum legitimate value such material holds for Defendants."); *Flores v. Albertsons, Inc.,* 2002 U.S. Dist. LEXIS 6171, at *20-21 (C.D. Cal. April 9, 2002) (the defendants need for information relating to the plaintiff class representatives' immigration status did not outweigh the injuries that could have resulted from the disclosure).

### C. A Protective Order Should be Entered Regarding the Rider contained in Plaintiffs' Deposition Notices and Other Discovery Seeking Information Pertaining to Plaintiffs' Immigration Status

Courts have uniformly prevented Defendants from inappropriately injecting false and highly prejudicial issues into actions seeking enforcement of basic employment rights, and have recognized that the need for protection extends to related inquiries such as social security and tax documents, which could lead to the disclosure of immigration status or put a plaintiff in jeopardy on account of her immigration status. *Ponce,* 2006 WL 941963, at *1; *Galaviz-Zamora,* 230 F.R.D. at 503; *Flores v. Amigon,* 233 F. Supp. 2d at 464.

Because the information sought in Defendants' riders to the Deposition Notices is wholly irrelevant to Plaintiffs' class claims for owed overtime wages, and because the use of such

9

information by Defendants will necessarily cause a chilling effect on employees willing to recover their owed wages – a protective order should be entered regarding the Defendants' attempts to discover such information. *Galaviz-Zamora,* 230 F.R.D. at 503; *Montoya,* 530 F. Supp. 2d 746; see also the May 9, 2008 protective order entered by Magistrate Judge Denlow (Exhibit B).

Moreover, it should be noted that Plaintiffs have no objection to agreeing to stipulate as to what names they worked under and which social security numbers appear on any of the Plaintiffs' employment records. See Plaintiffs' proposed order, attached hereto as Exhibit A.

## IV.  CONCLUSION

Accordingly, Plaintiffs request that the Court enter the Order in the form attached in Exhibit A, entering a protective order barring Defendants from taking discovery relating to or bearing upon Plaintiffs' immigration status.

Respectfully submitted,

Dated:  June 16, 2008

s/Maureen A. Bantz
Douglas M. Werman (ARDC #6204740)
Maureen A. Bantz (ARDC#6289000)
Werman Law Office, P.C.
77 West Washington Street, Suite 1402
Chicago, Illinois 60602
(312) 419-1008

Jamie G. Sypulski
Law Office of Jamie G. Sypulski
122 South Michigan Avenue
Suite 1720
Chicago, Illinois 60603
312/360-0960

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the following **Plaintiffs' Motion for a Protective Order** was served via electronic mail on May 12, 2008 on:

Jeffrey E. Schiller
David J. Ben-Dov
Deutsch, Levy & Engel, Chartered
225 West Washington Street, Suite 1700
Chicago, Illinois 60606

Lawrence R. Miller
Garden Fresh Market
7150 Capitol Drive
Wheeling, IL 60090

s/Maureen A. Bantz
Maureen A. Bantz